UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
COLIN HARPER,

        Petitioner,

-against-

UNITED STATES OF AMERICA,

        Respondent.
-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-4530 (CBA)

**AMON, United States District Judge:**

On August 3, 2015, petitioner Colin Harper sought a writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. (D.E. # 1 ("Pet.") at 1.) For the reasons set forth below, the Court grants in part and denies in part Harper's motion.

## BACKGROUND

On February 21, 2014, federal law enforcement agents from the United States Drug Enforcement Administration ("DEA") arrested Harper after executing a search warrant at his residence in Queens, New York. Agents recovered approximately 700 grams of heroin and approximately $162,000 in United States currency, as well as two firearms and ammunition. Count One of the indictment charged Harper with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. (CR D.E. # 8.)[1]

On May 12, 2014, Harper pleaded guilty to Count One. (CR D.E. # 4 at 1.) At the plea allocution, Harper explained the circumstances of his crime. He stated that between January 2009 and February 2014, he purchased a kilogram of heroin and had worked with other people to distribute it. (D.E. # 7-Ex A ("Plea Tr.") at 20.) At no time did Harper ever indicate that he sought to distribute quantities of heroin that were less than one kilogram or that these agreements were

---

[1] References to "CR D.E." are to the docket of Harper's criminal case, 14-CR-170 (CBA) (E.D.N.Y. 2014).

1

distinct conspiracies that had occurred on multiple occasions. Instead, Harper indicated that he "bought a kilo of heroin, and [he] was going to distribute it." (Id.) The Court followed up on the quantity of heroin Harper that was distributing and he confirmed that "it was a kilo of heroin." (Id.) The Court found that Harper was acting voluntarily and that he understood the "charges, his rights, and the consequences of his plea." (Id. at 21.) In his plea agreement, Harper agreed to not file an appeal or a § 2255 habeas petition challenging his conviction or sentence, unless the Court imposed a term of imprisonment of 262 months or more. (D.E. # 7-Ex. B.)

On November 20, 2014, the Court sentenced Harper to 120 months of incarceration. (CR D.E. # 22.) Harper acknowledged that his trial counsel, Scott Brettschneider, had read the entire Pre-Sentence Investigation Report ("PSR") to him. (CR D.E. # 26 ("Sentencing Tr.") at 2–3.) Harper had no objections to the factual description of his crime, which explained how he had purchased and resold roughly 500 grams of heroin every month for approximately five years. (PSR ¶ 8.) This information came from the Harper's post-arrest statements and was corroborated by the 700 grams of heroin recovered from his home. (Id. ¶¶ 4–7.) At his sentencing, this Court credited Harper's "candor, at the time of his arrest, about the extent of his drug-dealing," (Sentencing Tr. at 7:24–25), and the prosecution noted Harper's "admission that he'd been dealing substantial amounts of heroin for a lengthy period of time," (id. at 5:21–22).

## DISCUSSION

Harper argues that his trial counsel was ineffective for three reasons: (1) he was counseled to enter a plea to a crime that he did not commit; (2) "the indictment [against him] was constructively amended" and his trial counsel failed to object to it; and (3) despite his timely requests, his attorney failed to appeal the sentence handed down by this Court. (Pet. at 2–3.)

Claims alleging ineffective assistance of counsel are evaluated under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such claims, the petitioner

2

must show both (1) that his counsel's performance was so deficient that it was objectively unreasonable under professional standards prevailing at the time; and (2) that counsel's deficient performance was prejudicial to the petitioner's case. Strickland, 466 U.S. at 687; see also Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005).

In the context of a guilty plea, the Supreme Court has stated that the applicable inquiry under the second prong of Strickland is whether "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). Therefore, because "sworn testimony given during a plea colloquy 'carries such a strong presumption of accuracy . . . a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" United States v. Rivernider, 828 F.3d 91, 105 (2d Cir. 2016) (quoting United States v. Juncal, 245 F.3d 166, 170–71 (2d Cir. 2001)); see also United States v. Lemaster, 403 F.3d 216, 221 (4th Cir.2005) ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." (internal quotation marks and citations omitted)).

## I. Harper's Actual Innocence Claim Fails

Harper claims that his trial counsel improperly counseled him to plead guilty to distribution of a kilogram of heroin in furtherance of one drug conspiracy when the evidence shows that he

3

engaged in many smaller heroin distribution conspiracies. (Pet. at 2.) Thus, according to Harper, he is "actually innocent" of the crime to which he pleaded guilty. (Id.) "The Second Circuit has held that a habeas court can consider a guilty plea in the context of making an actual innocence determination." Bower v. Walsh, 703 F. Supp. 2d 204, 227 (S.D.N.Y. 2010) (citing Doe v. Menefee, 391 F.3d 147, 168–69 (2d Cir. 2004)); see also Rosario v. U.S., 164 F.3d 729, 734 (2d Cir. 1998) (considering petitioner's inculpatory statements made during plea allocution in determining whether no reasonable juror would find petitioner guilty)); Colon v. United States, No. 07-CV-2172 (BSJ), 2010 WL 1644260, at *7 (S.D.N.Y. Apr. 21, 2010) ("[The petitioner's] claim of actual innocence lacks any factual support. [The petitioner] admitted his guilt in his plea agreement and under oath during his plea colloquy.").

Here, despite Harper's newfound contention that he distributed smaller quantities of heroin pursuant to multiple conspiracies, he entered a knowing, intelligent, and voluntary guilty plea to conspiracy distributing one kilogram of heroin. Indeed, at his plea hearing Harper explained to this Court that he "bought a kilo heroin, and [he] was going to distribute it." (Plea Tr. at 20.) After repeatedly discussing his crime, the counsel that he received before making his plea, and the consequences of pleading guilty to this crime, the Court concluded that his plea was made knowingly and voluntarily. (Id. at 21.) Furthermore, his criminal conduct was set forth at length in the PSR and was primarily based upon his post-arrest statements admitting to purchasing 500 grams of heroin per month across a five-year period. (PSR ¶ 8.) Harper confirmed that he had read and understood the PSR and he made no objections to it before he was sentenced. Therefore, Harper's actual innocence claim is "patently frivolous or false," Lemaster, 403 F.3d at 221, since he admitted to the crime in his post-arrest statements, at his plea hearing, and at his sentencing hearing. Thus, not only did Harper knowingly and voluntarily admit to distributing one kilogram

4

of heroin pursuant to a single conspiracy, there was also a substantial amount of evidence corroborating his guilt. See Thornton v. United States, 523 F. Supp. 2d 173, 181 (N.D.N.Y. 2007) ("[I]t is difficult to discern how [petitioner] could deny guilt given the underlying facts, his admissions when arrested, the evidence seized pursuant to warrant, and his factual admissions during his plea."). Accordingly, Harper's ineffective assistance of counsel claim based upon "actual innocence" fails because his plea was made knowingly, there was a strong factual basis for his plea, and he has presented no new evidence to the contrary.

## II. Harper's Contentions About the Indictment

Harper contends that his trial counsel was ineffective for failing to challenge a purported facial defect in his indictment. Harper was charged with what he claims is a "dual object" conspiracy—that is, that the conspiracy's goals were to (1) distribute and (2) possess with intent to distribute one kilogram or more of heroin. (Pet. at 4.) Harper claims that since the indictment did not expressly allege that the relevant quantity of one kilogram of more of heroin as to each conspiratorial object, the indictment failed to adequately charge a single conspiracy punishable under 21 U.S.C. § 841. (Id.) As such, he argues, his guilty plea was to a charge that had been constructively amended. (Id. at 5.)

Harper's claims are meritless. It is settled that objects of a conspiracy may be pled conjunctively in a single count of an indictment and the jury may convict by finding the defendant agreed to any one of the objects pled. See United States v. Coriaty, 300 F.3d 244, 250 (2d Cir. 2002) ("[T]he 'lack of sufficient evidence to support one of the objects of a multi-object conspiracy does not vitiate the conspiracy conviction, where there was sufficient evidence to support the other object.'" (quoting United States v. Pascarella, 84 F.3d 61, 71 (2d Cir.1996)); United States v. McDonough, 56 F.3d 381, 390 (2d Cir. 1995) ("Even had the indictment not been amended, the

5

conviction would stand. Where there are several ways to violate a criminal statute . . . a conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged."). Therefore, Harper is incorrect in asserting that the indictment was defective because it listed only the quantity to the object that he pleaded guilty to. Consequently, Harper failed to demonstrate that his trial counsel rendered ineffective assistance of counsel. Furthermore, Harper has failed to show that he was prejudiced by trial counsel not pursuing the objection to the indictment given his knowing admissions to this Court. Accordingly, this branch of Harper's claim for ineffective assistance of counsel is denied.

### III. Trial Counsel Was Ineffective for Failing to Heed Harper's Appeal Requests

Although Harper waived his appellate rights in his plea agreement, he asserts that he nevertheless timely communicated to Brettschneider a request to file a notice of appeal, and that counsel failed to do so. (Pet. at 4.) For instance, Harper averred that "he specifically and unequivocally informed counsel that I wanted to file an appeal," only later to discover that his counsel had failed to file his appeal. (D.E. # 11 ("Harper Aff.") ¶ 6.) A lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Where counsel's error leads to "the forfeiture of a proceeding itself," prejudice will be presumed. Id. at 483–84. That is, "[w]hen counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit." Id. (internal quotations and alterations omitted). Since Harper waived his appellate rights in his plea agreement, the Second Circuit has instructed that his claim is governed by the following principle:

> [E]ven after a waiver [of the right to appeal], a lawyer who believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a brief pursuant to Anders v. California, 386 U.S. 738 (1967). When counsel fails to do so, we will presume prejudice, as required by Roe v. Flores–Ortega, 528 U.S. 470 (2000), and the defendant

6

will be entitled to a direct appeal without any showing on collateral review that his appeal will likely have merit.

Campusano v. United States, 442 F.3d 770, 771–72 (2d Cir. 2006). "To give effect to this principle, whenever a § 2255 movant 'claims that his attorney failed to file a requested notice of appeal,' the district court is ordinarily required to hold a hearing to determine whether the client requested the appeal . . . without assessing the merits of the requested appeal." Daragjati v. United States, 598 F. App'x 50, 50–52 (2d Cir. 2015) (quoting Campusano, 442 F.3d at 776). Courts may expand the record to include affidavits or other written submissions to decide disputed facts. Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001). Courts are not required to hold a hearing where both parties have filed affidavits and thus "the testimony of [defendant] and his trial counsel would add little or nothing to the written submissions." Id.

The Government asserted that Brettscheider had not reviewed Harper's file when it spoke with him, but "he would be amenable to providing an affidavit should it be required by the Court." (D.E. # 7 ("Opp.") at 8 n.7.) The Court accepted the Government's invitation on March 3, 2018 by directing the Government to "submit an affidavit from petitioner's trial counsel, Scott Brettschneider, responding to petitioner's contention that he 'specifically and unequivocally directed Mr. Brettschneider to file a direct appeal of his conviction" by March 22, 2018. (D.E. dated Mar. 3, 2018.) That directive went unheeded so on April 2, 2018, the Court ordered the Government to show cause why it had failed to prove either an affidavit from Brettschneider or an explanation for its delay. (D.E. dated Apr. 2, 2018.) After the deadline for complying with the Court's order passed, the Government finally responded by asserting that it was now unable to make a direct request to Brettschneider since he was arrested on serious criminal charges "on or about March 26, 2018" and his criminal case is pending before this Court. (D.E. # 12 at 2.) The Government indicated that they have communicated this Court's request for an affidavit with

7

Brettschneider's counsel in the criminal matter and that "any such response by [him] be filed directly with the Court." (Id. at 3.) The Government admits that it made no effort to procure the affidavit in the weeks between when the Court ordered it to do so and Brettschneider's arrest. (Id.)[2] In any event, given the lapse of time and Brettscheider's present circumstances, the Court has no confidence that a response from Brettschneider will be forthcoming. Accordingly, the Court accepts Harper's uncontradicted statement that he timely instructed Brettschneider to file an appeal and he did not do so.

The remedy for Brettschneider's failure to file an appeal that has been requested by Harper is for the Court to grant him the right to file a notice of appeal. Campusano, 442 F.3d at 775. The Second Circuit has instructed that, in order to do so, Harper's sentence must be vacated, and the district court shall either "enter a new judgment imposing the same sentence in open court with defense counsel present, . . . [or] if the district court discerns any useful purpose in further considering the sentence, resentence the defendant." Garcia v. United States, 278 F.3d 134, 138 (2d Cir. 2002). At this point, the Court does not see any useful purpose in further considering Harper's sentence, nor has Harper proffered any such reason.

## CONCLUSION

For the reasons set forth above, Harper's motion is granted in part and denied in part. Accordingly, Harper's sentence is vacated. On May 10, 2018 at 9:30 a.m., this Court presently intends to enter a new judgment imposing the same sentence in open court, with new defense counsel present. The Government is directed to secure a writ so that Harper can attend this hearing. Harper will have 14 days from that date in which to file a Notice of Appeal. To the extent the Court has denied relief on Harper's § 2255 petition, the Court does not issue a certificate of

---

[2] The Government explained that its failures to respond to the Court's orders were the result of overlooking the first order and being on vacation when the second order was issued. (D.E. # 12 at 3.)

8

appealability because he has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 111–12 (2d Cir. 2000). The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

Dated: April 18, 2018
Brooklyn, New York

/s/CBA
Carol Bagley Amon
United States District Judge